■ In the Matter of SOCIETY OF THE NEW YORK HOSPITAL, Appellant, v ALFRED DEL VECCHIO et al., Respondents.—In a proceeding pursuant to CPLR article 78, in the nature of a mandamus, *inter alia,* to compel the respondents to reach a determination on the petitioner's application for a zoning change, the petitioner appeals from a judgment of the Supreme Court, Westchester County (Martin, J.), dated March 11, 1985, which dismissed the proceeding, and from so much of an order of the same court, entered April 18, 1985, as, upon

renewal and reargument, adhered to the original determination.

Appeal from the judgment dismissed. The judgment was superseded by the order entered April 18, 1985.

Order affirmed insofar as appealed from.

The respondents are awarded one bill of costs.

The petitioner is the owner of an approximately 218-acre parcel of property (hereinafter the hospital site), in the City of White Plains, located in a zoning district designated R1-12.5, which permits single-family dwellings on lots having a minimum of 12,500 square feet. On July 27, 1984, the petitioner filed an application with the respondents, the members of the Common Council of the City of White Plains, requesting that its property be rezoned to a newly created zoning designation "Planned Development (PD)", which would permit development for a variety of commercial and residential uses. At a meeting of the Common Council of the City of White Plains on November 5, 1984, the respondents adopted a resolution declining to consider the application formally. Thereupon, the petitioner commenced this proceeding in the nature of mandamus seeking, *inter alia,* to compel the respondents to perform a duty enjoined upon them by General City Law § 83 to consider and vote upon the application.

General City Law § 83 provides, in pertinent part, that: "Wherever the owners of fifty per centum or more of the frontage in any district or part thereof shall present a petition duly signed and acknowledged to the common council, requesting an amendment, supplement, change or repeal of the regulations prescribed for such district or part thereof, it shall be the duty of the council to vote upon said petition within ninety days after filing of the same by the petitioners with the secretary of the council".

In addition to a direction compelling the respondents to consider and vote upon the application for a zoning change, the petitioner also sought a direction compelling them to commence the environmental review process pursuant to ECL article 8, the State Environmental Quality Review Act (hereinafter SEQRA). Special Term dismissed the proceeding, finding that the application did not meet the minimum criteria of General City Law § 83 so as to trigger the respondents' duty to act upon it. On the petitioner's motion for renewal and reargument, the court adhered to that determination.

It is well established that in a CPLR article 78 proceeding, relief in the nature of mandamus will lie to compel a govern-

mental body to perform a duty enjoined upon it by law *(Matter of Burr v Voorhis,* 229 NY 382). A fair reading of the language of General City Law § 83 indicates that where the requisite signatures of the owners of 50% or more of the frontage in any district or part thereof are presented on an application of this nature, the Common Council is without discretion in the matter and must vote upon the application within 90 days of its filing. There is similar directive language in section 12.4 of the local zoning ordinance, which incorporates General City Law § 83 by reference. Therefore, the question is whether the application at bar satisfied the threshold signature requirement such that the Common Council had a duty, not necessarily to approve the application, but to consider and vote upon it. That question is answered by examining the makeup of the R1-12.5 zoning district in the City of White Plains and by interpreting what is meant by the phrase "district or part thereof", as set forth in the statute.

The R1-12.5 zoning district in the City of White Plains is divided into two noncontiguous parts. The parcel in question is located in one of these two parts and constitutes a significant portion of the southeastern section of the city. In its application to the Common Council, the petitioner had asked that only its property be rezoned and, therefore, it argued in its petition in the instant proceeding that "as the sole owner of the Hospital Site, [it was] the owner of more than fifty (50) per centum of the frontage of that part of the district for which the petition requests an amendment, supplement, change or repeal of the prescribed zoning regulations". It is undisputed, however, that the petitioner is not the owner of 50% of the frontage of the whole R1-12.5 district or of that part of the R1-12.5 district in which the hospital site is located. As Special Term noted, the logical extension of the petitioner's interpretation of the meaning of the term "district or part thereof" in General City Law § 83 would be to confer upon each individual landowner the absolute right to compel the Common Council to consider and vote upon a petition for a zoning change as to his parcel since he would, of necessity, be the owner of 100% of the frontage of the property as to which the amendment is sought. In our view, the petitioner's interpretation is not an interpretation which is consistent with that which we perceive to be the purposes for which this statute was enacted.

The primary purpose of General City Law § 83 is to set forth the authority of a Common Council of a city, acting either on its own or on a petition, to amend, supplement,

repeal or change the regulation of districts established under its zoning ordinance (see, *Miner v City of Yonkers,* 19 Misc 2d 321, *affd* 9 AD2d 907, *lv denied* 10 AD2d 647, *lv denied* 8 NY2d 784). It also provides the mechanism by which petitions may be presented to the Common Council requesting changes in the zoning ordinance and the process by which protests may be filed against proposed changes (see, 1 Anderson, American Law of Zoning §§ 4.30-4.32 [2d ed 1976 & 1985 Cum Supp]; 2 Rathkopf, Zoning and Planning § 27.04 [2] [4th ed]).

Although, as the parties acknowledge, little or no legislative history exists which would shed light upon the meaning to be given to the terms "district or part thereof" as contained in the statute (General City Law § 83), it is apparent to us that by requiring a petition to be supported by the owners of at least one half of the frontage before subjecting the Common Council to a mandatory obligation to act, the Legislature intended to provide a buffer between the Council, which has the primary responsibility for determining the appropriate zoning designation, and those seeking to change said designations. To construe the statute as the petitioner requests would eliminate that buffer and effectively place upon the Common Council the burden of considering and acting upon virtually every petition for a zoning change presented to it. Any party seeking to change the zoning designation of his or her own parcel could simply make the application for a change specific to the parcel or some small area around that parcel and thereby easily achieve the necessary percentage of frontage. Moreover, as the dissent acknowledges, upon receipt of such a petition, the Common Council would also be required to commence environmental review procedures in conjunction with its consideration of the petition, imposing yet a further burden upon the Council.

As the respondents note, the corresponding provisions of the Town Law and the Village Law concerning the power to make changes in zoning ordinances confer no such right upon an individual landowner to compel the respective legislative bodies to take formal action upon his request for a change in the zoning of his parcel (Town Law § 265; Village Law § 7-708). It is difficult to conceive that the Legislature intended to confer such a right upon individual landowners in cities and impose such a burden under the threat of mandamus upon the Common Councils of cities, while granting no such right to landowners and imposing no such burden upon the legislative bodies of lesser municipalities. This unequal treatment of

landowners seems illogical *(see, Southold Sav. Bank v Gilligan,* 76 Misc 2d 30, 32).

The case of *Miner v City of Yonkers* (19 Misc 2d 321, *supra),* does not compel a different conclusion. *Miner* merely stands for the proposition that defects in a petition submitted to a Common Council pursuant to General City Law § 83 will not serve to undermine the validity of any action taken by that body upon the petition, since the Common Council is vested with the inherent power to enact amendments to the zoning ordinance and, provided it acts properly in its exercise of that power, may not be questioned for mere irregularities in a petition which prompted it to act *(Miner v City of Yonkers,* 19 Misc 2d 321, 324, *supra).*

We conclude, therefore, that the petitioner failed to obtain the signatures of the owners of the requisite percentage of the frontage in the part of the district in which its parcel is located pursuant to General City Law § 83 necessary to compel the Common Council to consider its application and, accordingly, that the proceeding was properly dismissed. Mangano, J. P., Brown, Rubin and Eiber, JJ., concur.

Thompson, J., concurs in part and dissents in part, and votes to dismiss the appeal from the judgment, but to reverse the order insofar as appealed from and vacate the judgment on the law, and grant the petition to the extent of directing the Common Council of the City of White Plains to consider the petitioner's application for a zoning change, with the following memorandum: I am unable to concur in the determination reached by Special Term and affirmed by the majority that the Common Council of the City of White Plains should not be required to consider and vote on the petitioner's application to have a certain parcel of property rezoned. I believe the majority's position entails a misreading of the provisions of General City Law § 83 which have been incorporated by reference, in pertinent part, in Zoning Ordinance of the City of White Plains § 12.4. I further believe that the majority misapprehends the case law construing the provisions of General City Law § 83. Accordingly, I dissent and vote to reverse the order of Special Term to the extent that it ruled that the Common Council need not consider the petitioner's application and to direct the respondents to consider the petitioner's application formally pursuant to General City Law § 83.

General City Law § 83 provides, in relevant part, that: "Wherever the owners of fifty per centum or more of the

frontage in any district or part thereof shall present a petition duly signed and acknowledged to the common council, requesting an amendment, supplement, change or repeal of the regulations prescribed for such district or part thereof, it shall be the duty of the council to vote upon said petition within ninety days after filing of the same by the petitioners with the secretary of the council."

General City Law § 83 has been incorporated into Zoning Ordinance of the City of White Plains § 12.4. Zoning Ordinance of the City of White Plains § 12.4 further explicitly provides that consideration by the Common Council of a petition presented by 50% or more of the frontage in the district is *mandatory*.

The property which is the subject of petitioner's rezoning application is situated in a zoning district classified as R1-12.5 which permits single-family dwellings on minimum building lots of 12,500 square feet. The R1-12.5 zoning classification applies to two noncontiguous areas of the City of White Plains. The petitioner is the owner of more than 50% of the frontage of that part of the district for which the zoning change is sought. However, petitioner is not the owner of 50% or more of the frontage of the entire noncontiguous R1-12.5 district nor is it the owner of 50% of the frontage of that portion of the R1-12.5 zone in which it is located.

Special Term construed the language of General City Law § 83 to mean that the Common Council of the City of White Plains was not required to consider and vote on the petitioner's application for a zoning change unless the application is filed by the owners of at least 50% of the frontage of the property in the total R1-12.5 zone or of the frontage of the property within the part of the district in which the property is situated. The majority concur in this statutory interpretation. I disagree.

Contrary to the view expressed by the majority, I believe the plain meaning of this statute mandates that the petition be signed by the owners of at least 50% of the frontage in that part of the district for which a zoning change is sought. The respondents' contention, credited by Special Term, that the language "or part thereof" contained in General City Law § 83 refers to the entire contiguous portion of the district has no basis in the statutory language. The construction urged by the respondents would produce the absurd result of requiring that the owners of parcels in an entire contiguous area which has the same zoning restrictions seek a zoning change even if the zoning change sought would be warranted in only a small

portion of the district. The practical effect of such an interpretation is to deny a substantial landowner access to the legislative process for the simple purpose of having its application for a zoning change considered. I simply cannot countenance such a strained interpretation of the plain language of the statute.

Moreover, the majority's summary rejection of the case of *Miner v City of Yonkers* (19 Misc 2d 321, *affd* 9 AD2d 907, *lv denied* 10 AD2d 647, *lv denied* 8 NY2d 784) as support for the interpretation urged herein lacks any firm basis. Their reading of *Miner* is simply that a city's Common Council may elect to amend a zoning ordinance even absent the requisite petition. I interpret the *Miner* decision as having more far-reaching implications. Close scrutiny of the *Miner* decision reveals that the interpretation of General City Law § 83 contemplated therein requires only that a petition for a zoning change include signatures of 50% of the owners of land in the area to be rezoned.

I would further note that determination of the matter before us does not require improper judicial interference in the exercise of legislative discretion as condemned by the courts of this State *(see, Matter of Southern Dutchess Country Club v Town Bd.,* 25 AD2d 866, *affd* 18 NY2d 870; *Homefield Assn. v Frank,* 273 App Div 788, *affd* 298 NY 524), but merely calls for an inquiry into the improper refusal of the Common Council to exercise its legislative power by entertaining an application for a zoning change. I recognize that if the Common Council had made a determination thereon after proper consideration, any further consideration by the courts should be foreclosed *(cf. Matter of Gellis v Clark,* 32 Misc 2d 597, 600).

Lastly, if the petitioner's application was formally considered in the proper exercise of the common council's legislative authority, compliance with the State Environmental Quality Review Act would also be required. Accordingly, in my view, the respondents are mandated to initiate an environmental review upon consideration of the petitioner's application.