Matter of Glyka Trans, LLC v City of New York (2018 NY Slip Op 03129)





Matter of Glyka Trans, LLC v City of New York


2018 NY Slip Op 03129


Decided on May 2, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 2, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
JOSEPH J. MALTESE
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.


2015-11661
 (Index No. 8962/15)

[*1]In the Matter of Glyka Trans, LLC, et al., appellants,
v
City of New York, et al., respondents.


Cuti Hecker Wang LLP, New York, NY (Eric Hecker, John R. Cuti, and Daniel Mullkoff of counsel), for appellants.
Zachary W. Carter, Corporation Counsel, New York, NY (Scott Shorr and MacKenzie Fillow of counsel), for respondents.



DECISION & ORDER
In a hybrid proceeding pursuant to CPLR article 78 and action for declaratory relief, the petitioners/plaintiffs appeal from an order and judgment (one paper) of the Supreme Court, Queens County (Allan B. Weiss, J.), entered November 19, 2015. The order and judgment granted the respondents/defendants' motion pursuant to CPLR 3211(a) and 7804(f) to dismiss the amended petition/complaint, denied the amended petition/complaint, and dismissed the proceeding/action.
ORDERED that the order and judgment is affirmed, with costs, and the matter is remitted to the Supreme Court, Queens County, for the entry of an amended judgment, inter alia, declaring, among other things, that the decision of the New York City Taxi and Limousine Commission to allow companies such as Uber Technologies, Inc., to pick up passengers via a smartphone application does not constitute an unconstitutional taking of the petitioners' property.
This proceeding/action arises out of the rapid growth of for-hire vehicle services provided by companies such as Uber Technologies, Inc. (hereinafter Uber), which allow passengers to use a smartphone application to electronically request on-demand ground transportation. The petitioners/plaintiffs (hereinafter collectively the petitioners) are taxicab medallion owners, drivers of taxicabs, leasing agents, entities that manage taxicab medallions, and a trade association of licensed leasing agents that manage taxicab medallions.
In New York City, there are three types of vehicles that are available to passengers for hire: (1) yellow medallion taxicabs; (2) Street Hail Liveries, which are green taxicabs; and (3) for-hire vehicles (hereinafter FHVs). FHVs include livery cars, luxury limousines, and "black cars," which are FHVs that are "dispatched from a central facility . . . , where such central facility has certified to the satisfaction of the [TLC] that more than ninety percent of the central facility's for-hire business is on a payment basis other than direct cash payment by a passenger" (Administrative Code of the City of New York § 19-502[u]). Pursuant to Administrative Code of the City of New York § 19-504(a)(1), "[n]o motor vehicle other than a duly licensed taxicab shall be permitted to accept hails from passengers in the street." State legislation known as the "HAIL Act" similarly provides that medallion taxicabs are "permitted to pick up passengers via street hail from any location within the city of New York." Medallion taxicabs also retain "the exclusive right . . . to pick up passengers [*2]via street hail" in the "HAIL exclusionary zone," which is the New York City airports and the area of Manhattan south of East 96th Street and south of West 110th Street (L 2011, ch 602, as amended by L 2012, ch 9, §§ 4[c]; 11). Street Hail Liveries are permitted to pick up passengers by street hail anywhere in New York City except in the HAIL exclusionary zone. FHVs are prohibited from picking up passengers by street hail, and may only accept passengers "on the basis of telephone contract or prearrangement" (Administrative Code of City of NY § 19-507[a][4]; see L 2011, ch 602, as amended by L 2012, ch 9, § 11).
On or about March 31, 2015, the petitioners commenced this hybrid CPLR article 78 proceeding and declaratory judgment action against the respondents/defendants (hereinafter collectively the respondents). The petitioners alleged in the amended petition/complaint that, in January 2015, the respondent/defendant New York City Taxi and Limousine Commission (hereinafter the TLC) adopted rules known as the "E-Hail Rules," which "allow passengers to summon taxicabs and Street Hail Liveries in New York City by E-Hail and to make E-Payments." In its notice of promulgation of the rules, the TLC stated that the E-Hail Rules were enacted based on data collected during a pilot program which "show that E-Hail [applications on cell phones] make[ ] it easier for passengers and drivers to connect without reducing the availability of the hallmark New York City hand-hail for other passengers." Thereafter, on or about April 24, 2015, the TLC published a set of proposed rules, referred to herein as the FHV E-Dispatch Rules, to "impose uniform standards on all current and future apps used by FHVs, whether they are offered by a base or by a licensed independent app company utilized by a base."
The petitioners challenged the decision of the TLC to, among other things, "allow black cars to accept e-hails." The first cause of action in the amended petition/complaint alleged, inter alia, that the TLC's decision to "allow black cars to accept e-hails is arbitrary and capricious, an error of law, and a failure to perform a mandatory duty," and sought to compel the TLC to enforce "its e-hail rules against black cars," "its base station dispatch rules against Uber," and "its base station franchise/cooperative rules against Uber." The second cause of action, entitled "Violation of NYC Charter § 2303(b)(4)," alleged that "[b]y permitting black cars to accept e-hails anywhere in the city, the TLC has effectively expanded the number of medallions in circulation without legislative authorization," and sought to compel the TLC to enforce "its e-hail rules against black cars." The third cause of action sought a judgment declaring that "the TLC's decision to allow black cars to pick up e-hails . . . violates SEQRA and [City Environmental Quality Review]." The fourth and fifth causes of action sought a judgment declaring that "the City's decision to allow black cars to pick up e-hails constitutes an unconstitutional taking of the Petitioners' property without just compensation" under the Takings Clause of the Fifth Amendment of the United States Constitution and article I, § 7 of the New York Constitution.
The petitioners alleged in the amended petition/complaint that medallion yellow taxicabs have the exclusive right to pick up passengers via "hail," which includes both a "request, either through a verbal (audio) action . . . and/or a visible physical action" and "an electronic method such as an E-Hail App" (35 RCNY 51-03). The petitioners alleged that "[t]he TLC's decision to allow companies like Uber to pick up e-hails—even though Uber is not required to shoulder the enormous financial burden of purchasing medallions and is not bound by the fare limitations and other significant restrictions that apply to yellow taxis in consideration for their hail exclusivity—enables Uber to compete unfairly with yellow taxis." They also alleged that "Uber's explosive growth and brazen encroachment upon the hail exclusivity that belongs to medallion owners have caused Petitioners to suffer very significant economic harm, both to the value of their medallions and to their incomes."
The respondents moved pursuant to CPLR 3211(a) and 7804(f) to dismiss the amended petition/complaint on the grounds that the petitioners lacked standing to commence this proceeding/action, that the proceeding/action was time-barred, and that the petitioners failed to state a cause of action. The Supreme Court granted the respondents' motion, denied the amended petition/complaint, and dismissed the proceeding/action. The petitioners appeal.
As a threshold matter, the respondents failed to establish, as a matter of law, that the [*3]petitioners lacked standing to maintain causes of action seeking relief in the nature of mandamus to compel, mandamus to review, and damages for an unconstitutional taking (see Brown-Jodoin v Pirrotti, 138 AD3d 661; see also North State Autobahn, Inc. v Progressive Ins. Group Co., 102 AD3d 5, 17; Matter of Ricket v Mahan, 97 AD3d 1062). Contrary to the respondents' contention, the allegations in the amended petition/complaint were "sufficient to satisfy the requirements that [the petitioners] have an actual stake in the litigation and suffer a harm that is different from that of the public at large" (Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 7-8). The respondents also failed to demonstrate, as a matter of law, that those causes of action were barred by the applicable four-month statute of limitations (see Roman Catholic Diocese of Brooklyn, N.Y. v Christ the King Regional High Sch., 149 AD3d 994, 997; Cali v Savino, 127 AD3d 404, 405; Vekiarellis v Pall Corp., 302 AD2d 377, 378; see also Matter of Seniors for Safety v New York City Dept. of Transp., 101 AD3d 1029, 1031-1032). The respondents rely on an "Industry Notice," which is dehors the record and so not properly before the Court on this appeal (see CPLR 5526; Nadasi v Nadel-Nadasi, 153 AD3d 1346, 1351; Castello v Castello, 144 AD3d 723, 727). Accordingly, the Supreme Court erred in determining that the cause of action in the nature of mandamus to review was time-barred.
However, we agree with the Supreme Court's determination that the petitioners failed to demonstrate a clear legal right to relief in the nature of mandamus to compel the TLC to enforce "its e-hail dispatch rules against black cars," "its base station dispatch rules against Uber," and "its base station franchise/cooperative rules against Uber" (see New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184; Matter of Suffolk County Assn. of Mun. Empls., Inc. v Levy, 133 AD3d 676, 677; Clayton v New York City Taxi & Limousine Commn., 117 AD3d 602, 602-603; Matter of Gonzalez v Village of Port Chester, 109 AD3d 614, 615-616; Nasca v Sgro, 101 AD3d 963, 965). "It is well settled that the remedy of mandamus is available to compel a governmental entity or officer to perform a ministerial duty, but does not lie to compel an act which involves an exercise of judgment or discretion" (Matter of Brusco v Braun, 84 NY2d 674, 679; see Matter of Eidt v City of Long Beach, 62 AD3d 793, 795).
"[M]andamus is an extraordinary remedy' that is available only in limited circumstances'" (Matter of County of Chemung v Shah, 28 NY3d 244, 266, quoting Klostermann v Cuomo, 61 NY2d 525, 537; see Matter of Gonzalez v Village of Port Chester, 109 AD3d at 615), and only when the petitioner demonstrates a clear legal right to the relief sought (see Matter of Ogunbayo v Administration for Children's Servs., 106 AD3d 827, 827; Matter of Daniels v Lewis, 95 AD3d 1011, 1012). "[T]he courts must be careful to avoid . . . the fashioning of orders or judgments that go beyond any mandatory directives of existing statutes and regulations and intrude upon the policy-making and discretionary decisions that are reserved to the legislative and executive branches" (Klostermann v Cuomo, 61 NY2d at 541). Here, the petitioners did not seek to compel the performance of a nondiscretionary, ministerial act. Rather, the petitioners sought to compel a particular result; the petition sought a determination that "an electronic request for immediate pickup—made directly and automatically by a passenger to a driver without a dispatcher—is not a prearrangement" (emphasis in original). Contrary to the petitioners' contentions, no provision in title 19 of the Administrative Code of the City of New York or the TLC rules imposes a mandatory duty upon the TLC to treat an electronic request for a ride from an FHV as a street hail. The TLC's decision concerning how to treat an electronic request for a ride from an FHV by a passenger using a smartphone application involves an exercise of judgment and discretion and cannot be compelled by writ of mandamus. Moreover, although the petitioners allege in the amended petition/complaint that the TLC has refrained from enforcing its "base station dispatch rules" and "base station franchise/cooperative rules" against Uber (see 35 RCNY 59A-03[c][2]; [e]; 59B-03[c][2]; 59B-08[b]), "the decision to enforce [those provisions] rests in the discretion of public officials charged with enforcement and is not a proper subject for relief in the nature of mandamus to compel" (Matter of Saks v Petosa, 184 AD2d 512, 513; see Matter of Kroll v Village of E. Hampton, 293 AD2d 614, 615-616).
We also agree with the Supreme Court's determination that the TLC did not act arbitrarily or capriciously in deciding that the use of a smartphone application to request a ride from an FHV was a form of prearrangement and not synonymous with a street hail. "Judicial review of [*4]administrative determinations that were not made after a quasi-judicial hearing is limited to whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (Matter of Riverside Tenants Assn. v New York State Div. of Hous. & Community Renewal, 133 AD3d 764, 766). Similarly, "[t]he standard for judicial review of an administrative regulation is whether the regulation has a rational basis and is not unreasonable, arbitrary or capricious, or contrary to the statute under which it was promulgated" (Matter of Puerto v Doar, 142 AD3d 34, 45-46 [internal quotation marks omitted]; see Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 254; Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 331-332). "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231).
The allegations in the amended petition/complaint demonstrate that there is a significant distinction between a street hail and an electronic request for transportation, whether transmitted to a taxicab or an FHV. The petitioners alleged that "Uber connects passengers and drivers through a computer system," and that "Uber's users provide their credit card information in advance when they first download and install the app." The petitioners alleged that "[w]hen a user is ready to travel, the Uber app displays a map showing the user the precise locations of available cars and provides the approximate travel time of the closest available car to the user's location. If the user e-hails a car, the e-hail is immediately and automatically transmitted to the available cars in the vicinity." The TLC's decision to treat the use of a smartphone application to summon an FHV as akin to booking an FHV on the internet or calling a dispatcher, which are both forms of prearrangement, was not arbitrary and capricious. Although the petitioners emphasize that the E-Hail rules define the term "Hail" as including both an "E-Hail" and a traditional street hail (35 RCNY 51-03), that does not command the conclusion that all hails are street hails.
Moreover, we agree with the Supreme Court's determination that the TLC's alleged decision to "allow black cars to pick up e-hails" did not, as a matter of law, constitute an unconstitutional taking of the petitioners' property (see Illinois Transp. Trade Assn. v City of Chicago, 839 F3d 594 [7th Cir]; Minneapolis Taxi Owners Coalition, Inc. v City of Minneapolis, 572 F3d 502, 509 [8th Cir]; Boston Taxi Owners Assn. v Baker, 2017 US Dist LEXIS 9628 [D Mass, No. 16-11922-NMG]; Newark Cab Assn. v City of Newark, 235 F Supp 3d 638[D NJ]). The crux of the petitioners' claim is that the TLC's decision to "allow black cars to pick up e-hails" has diminished the value of their medallions, decreased the number of taxicab trips per day, and reduced their medallion income. However, " [p]roperty' does not include a right to be free from competition" (Illinois Transp. Trade Assn. v City of Chicago, 839 F3d at 596). Accordingly, the TLC's decision to allow companies such as Uber to pick up passengers via a smartphone application does not interfere with a taxicab's use of its medallion or exclusive right to pick up passengers via street hail.
The petitioners' remaining contentions are without merit.
Since this is, in part, a declaratory judgment action, we remit the matter to the Supreme Court, Queens County, for the entry of an amended judgment, inter alia, declaring, among other things, that the TLC's decision to allow companies such as Uber to pick up passengers via a smartphone application does not constitute an unconstitutional taking of the petitioners' property (see Lanza v Wagner, 11 NY2d 317, 334).
BALKIN, J.P., MALTESE, BARROS and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court